

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Morris V. Hassell
County Attorney
Cherokee County
Rusk, Texas

Dear Sir:

Opinion No. O-5580
Re: Under the facts submitted
are the ambulances in ques-
tion subject to the provi-
sions of Senate Bill 230,
48th Legislature?

This will acknowledge receipt of your letter re-
questing the opinion of this department upon the above stat-
ed question. We quote in part from your letter as follows:

"I am asking your opinion as to the extent
of coverage of S. B. No. 230 of the 48th Legis-
lature. We have some ambulances operated in this
county that are called '3low Ambulances'. Such
ambulances do not make any emergency calls but
only carry people from their homes to hospitals
or bring sick from the hospital to their homes.
I am asking you if such ambulances are required
to comply with S. B. No. 230 of the 48th Legisla-
ture, that is, have a permit from the State Board
of Health as provided in such bill, or be subject
to criminal prosecution."

Section 1 of said Senate Bill No. 230 provides as
follows:

"No person, firm or corporation shall oper-
ate or cause to be operated in the State of Texas,
any emergency ambulance, public or private, or
any other vehicle commonly used for the trans-
portation or conveyance of the sick or injured,
without first securing a permit therefor from the
State Board of Health as hereinafter provided."

Honorable Morris W. Hassell, page 2

The above quoted section sets forth the types or classes of vehicles within the purview of the bill under discussion. The operators of any emergency public or private ambulances or any other vehicle commonly used for the transportation or conveyance of the sick or injured must first secure the prescribed permit before operating such vehicles in this State. Your query is whether an ambulance which plans to make no emergency calls comes within the provisions of Senate Bill No. 230. You have expressed the opinion such non-emergency ambulance is within the scope of the bill's provisions as it is a "vehicle commonly used for the transportation or conveyance of the sick or injured."

We are of the opinion that insofar as the act applies, the vehicles within its purview are those used in emergencies. We say this after referring to the history of the passage of the Act. We have searched the legislative journals and have found that at one stage of the bill's passage, there was no mention of emergency ambulances; by amendment adopted in the House of Representatives the word "emergency" was inserted before "ambulance" in Section 1 of the bill. This in a rather unequivocal manner discloses that it was the intention of the Legislature that the Act applies to emergency ambulances.

We are also of the opinion that "any other vehicle commonly used for the transportation or conveyance of the sick or injured" is within the emergency category. The caption of a law is a part thereof and is given the same effect as if it was in the body of the bill. Missouri, etc., Ry. Co. v. Mahaffey, 105 Tex. 394, 150 S. W. 883. It is always proper in the construction of a law to refer to the caption for explanation and it is equally permissable in the construction of the caption to refer to the body of the Act. City of Austin v. McCall, 95 Tex. 575, 68 S. W. 791. The reason we refer to the above rules of construction and cite the authorities in support thereof, is that the caption in part to Senate Bill No. 230 reads: "An Act regulating public and private emergency ambulances operated in the State of Texas. . ."; there is no mention of "any other vehicle commonly used for the transportation or conveyance of the sick or injured." Thus it could be argued that the title of the Act does not give sufficient notice of its provisions and therefore the provisions not included in the title should be stricken. See Bitter

Honorable Morris W. Hassell, page 3

v. Bexar County, 11 S. W. (2d) 163 (Com. App.); Eastland County v. Ford, 23 S. W. (2d) 848. It has been the general policy of the courts, however, to construe liberally the caption of an Act; we think by a liberal construction of considering the caption and the body of the act together, ambulances as used in the title means ambulances or other vehicles used for carrying the sick or injured, but in construing the body of the Act with the title, ambulances or these other vehicles are of the emergency types. For an example of this construction we refer you to the case of Commonwealth Ins. Co. v. Finegold, 183 S. W. 833. We are therefore of the opinion that by construing the title and body of Senate Bill No. 230 together in order to ascertain the intention of the Legislature and to sustain the provision of the bill referring to other vehicles besides ambulances, the "other vehicles commonly used for the transportation or conveyance of the sick or injured" are those used for emergencies.

After we have reached the foregoing conclusion, the question arises as to what the Legislature meant by "emergency." The bill does not contain any definition of or direction as to when an emergency exists; however, we do not think this omission on the part of the Legislature creates any invalidation of the bill, for it would be almost impossible to state in a law every condition or set of circumstances from which an emergency might be said to arise or exist. In other words, the statute will indicate the general policy and leave the enforcement and application to the administrative officers. Contract Cartage Co. v. Morris, 59 F. (2d) 437.

The general policy indicated by Senate Bill No. 230 is to enhance the safety of the public who ride in ambulances and to accomplish this end the Legislature prescribed that certain equipment be carried in the ambulances and that learned attendants accompany each vehicle which comes within the purview of this bill. An emergency is transitory in character; that is, it may arise or cease at any moment without notice. Assuming conveyance of the injured or sick to and from the hospitals is not ordinarily an emergency; circumstances unforeseen could arise and often do which would cause or change the situation to one of an emergency; one which the prescribed requirements of this bill would possibly enhance the safety of the person conveyed. Furthermore, carrying persons to the hospital are most often done in cases of emergencies.

Honorable Morris W. Hassell, page 4


In view of the fact an operator must determine whether or not he will operate emergency ambulances before he undertakes to perform at all, we do not conceive how he can foresee or look into the future and state he will not use his vehicle in emergencies, for he is unable to foretell or prophesy when a non-emergency call will transmit into an emergency mission. Therefore, to say one will not use his vehicle on emergency calls involves too many contingencies from a prospective viewpoint, and if such a statement would relieve an operator from securing a permit, the spirit of the law would be defeated and its purpose not achieved.

It is therefore the opinion of this department that your question be answered in the affirmative.

APPROVED OCT 22, 1943

FIRST ASSISTANT
ATTORNEY GENERAL

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Robert O. Koch
Assistant

ROK:db

